## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OKKO Business PE | )<br>)<br>) |
| *Plaintiff,* | )<br>)<br>) |
| v. | )      **1:14-cv-00925-CKK** |
| | ) |
| JACOB J. LEW<br>in his official capacity as<br>Secretary of the Department of the Treasury, | )<br>)<br>)<br>) |
| | )      **PLAINTIFF'S** |
| | )      **OPPOSITION TO** |
| *Defendant* | )      **DEFENDANTS'** |
| And | )      **MOTION FOR** |
| | )      **SUMMARY** |
| ADAM J. SZUBIN<br>in his official capacity as<br>Director of the Office of Foreign Assets Control | )      **JUDGMENT**<br>)<br>) |
| | ) |
| *Defendant,* | )      **ECF Case** |
| | )<br>) |
| And | )<br>) |
| | ) |
| THE UNITED STATES DEPARTMENT<br>OF THE TREASURY, OFFICE OF FOREIGN<br>ASSETS CONTROL | )<br>)<br>) |
| | ) |
| *Defendant.* | )<br>) |
| | )<br>) |

**RECEIVED**

**OCT 2 4 2014**

Clerk, U.S. District and
Bankruptcy Courts

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff OKKO Business PE, by and through undersigned counsel, Erich C. Ferrari, and respectfully files this Opposition to Defendants' Motion for Summary Judgment. In support of this Motion, Plaintiff has attached a Memorandum in Support and refers to the Administrative Record.

Respectfully submitted this 24th day of October, 2014.

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email:
Ferrari@ferrariassociatespc.com
DC Bar No. 978253

*Attorney for Plaintiff*
*OKKO Business PE*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………….……….……..….. v

INTRODUCTION ……………………………………………………….……….…..... 1

STATEMENT OF MATERIAL FACTS IN DISPUTE ……………….……….…….. 3

BACKGROUND ……………………… …………………………………………… 3

    A. The Blocking of Plaintiff's Property …………………………...…..…..…. 3

    B. Statutory Background …………………………….………………………..... 7

    C. Procedural Background …………………………………………………… 9

STANDARD OF REVIEW ………………………………………………………….. 9

ARGUMENT ………………………………………………………...…………… 11

    A. OFAC's Denials Were Arbitrary and Capricious ………………..…….….. 11

       1. The deposit agreement did not convey an interest in property to a
          sanctions target ……………………………………………….…..…. 12

       2. The facts relied upon are not rationally connected to the continued
          blocking ……………………………………………………..………. 15

    B. OFAC's Decisions Were Made in Excess of Statutory Authority …..……... 19

       1. OFAC exceeded its authority by continuing to block funds in which no
          sanctions target maintains an interest ………………………………….. 20

       2. OFAC's policy arguments are not rationally connected to the continued
          blocking …………………………………………………………….…. 23

    C. OFAC's Denials Should be Reviewed *De Novo* …………………………….. 25

CONCLUSION ………………………………………………..…………….……… 28

## TABLE OF AUTHORITIES

**CASES**                                                      **PAGE(S)**

*Anderson v. Liberty Lobby*
    477 U.S. 242 (1986) …………………………………….……….. 10

*Cabinet Mountains Wilderness v. Peterson,*
    685 F. 2d 678 (D.C. Cir. 1982) …………………………………..… 10, 25

*Camp v. Pitts,*
    411 U.S. 138 (1973) ………………………………………….…. 27

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971) ………………………………………….… passim

*Consarc Corp. v. Dep't of the Treasury,*
    71 F.3d 909 (D.C. Cir. 1995) ……………………………………. 11, 14

*Consarc Corp. v. Iraqi Ministry,*
    27 F.3d 695 (D.C. Cir. 1994) ……………………………………. 11, 14

*Global Relief Found. v. O'Neill ("Global Relief I"),*
    207 F. Supp. 2d 779 (N.D. Ill. 2002) ……………………………. 11

*Global Relief Found. v. O'Neill ("Global Relief II"),*
    315 F.3d 748 (7th Cir. 2002) ……………………...…………….. 13, 15, 20

*Greenberg v. FDA,*
    803 F.2d 1213 (D.C. Cir. 1986) …………………………….…... 10

*Holy Land Found. For Relief and Dev. v. Ashcroft ("Holy Land I"),*
    219 F. Supp. 2d 57 (D.D.C. 2002) …………………………………. 10, 11

*Holy Land Found. For Relief and Dev. v. Ashcroft ("Holy Land II"),*
    333 F.3d 156 (D.C. Cir. 2003) ……………………………………..… 12, 13, 20

*Islamic Am. Relief Agency v. Unidentified FBI Agents,*
    394 F. Supp. 2d 34 (D.D.C. 2005) …………………………….…... 11

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ………………………………………..….…........ 1, 10, 15, 19

*Nat'l Org. for Women v. Social Sec. Admin.,*
    736 F.2d 727 (D.C. Cir. 1984) …………………………...…………. 11, 26

*Public Citizen, Inc. v. Lew,*
    127 F. Supp. 2d 1 (D.D.C. 2010) ……………………………..…….. 17

*Regan v. Wald,*
    468 U.S. 222 (1984) …………………….……………….....….... 11

*Tao v. Freeh,*
    27 F.3d 635  (D.C. Cir. 1994) ………………………………..…….. 10

*Zarmach Oil Servs., Inc. v. Dep't of the Treasury,*
    750 F. Supp. 2d 150 (D.D.C. 2010) …………………….....…..…... passim

**STATUTES**

5 U.S.C. § 702 …………………………………………………….…….…. 11

5 U.S.C. § 706 …………………….…………….………………….….…. passim

18 U.S.C. § 1001 …………………………………………………….....… 24

18 U.S.C. § 1621 …………………………………………………....….…. 24

28 U.S.C. § 1746 …………………………………………………....….…. 24

50 U.S.C. §§ 1701-1706 …………..……………………………….…... 1, 7

50 U.S.C. § 1701 ……………………………………………….......…… 7

50 U.S.C. § 1702 ………………………………………………….....….... 7, 20

50 U.S.C. § 1705 ……………………………………………………….…. 24

**REGULATIONS**

31 C.F.R. § 501.801 …………………………………………………...… 5, 26, 27

31 C.F.R. Part 548 ………………………………………………….....…. 1, 8

31 C.F.R. § 548.201 …………………………………………………..…. 8, 12, 20

31 C.F.R. § 548.202 …………………………………………………..…. 9, 22

31 C.F.R. § 548.305 …………………………………………………..….. 8, 20

31 C.F.R. § 548.308 ……………………………………………...……..…. 8

31 C.F.R. § 548.309 ………………………………………………………. 8, 14, 22

31 C.F.R. § 548.403 ………………………………………………….... 9

31 C.F.R. § 548.701 ………………………………………………….... 24

**EXECUTIVE MATERIALS**

Exec. Order No. 13,405, 71 Fed. Reg. 35,485 (June 20, 2006) …………… passim

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 56 ………………………………………………………. 10

**LOCAL CIVIL RULES OF PROCEDURE**

Local Rule 7(h) ………………………………………………....…… …… 3

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case is not a challenge of the President's authority to impose economic sanctions, nor does it call into question the seriousness of the national security or foreign policy goals that the Defendants seek to further through their actions. Rather, this case calls upon the Court to ensure that when an agency takes action pursuant to such authority, and are provided great deference in doing so, that the action must nevertheless be reasonable and rationally based. *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

OKKO Business PE ("Plaintiff") is an entity that is incorporated and operates under the laws of Ukraine. On April 3, 2012, Plaintiff entered into a simple deposit agreement with UE Belarusian Oil Trading House ("UEB") in Minsk, Belarus. The purpose of the agreement was to participate in an auction to purchase certain oil products, whereby UEB was merely the organizer. In accordance with the deposit agreement, Plaintiff initiated a deposit payment from its bank account in Ukraine to an account held by UEB. The funds transfer was effectuated through an intermediary financial institution located in London, United Kingdom.

As the funds were being transferred through the United Kingdom, the intermediary financial institution blocked the funds pursuant to the Belarus Sanctions Regulations ("Belarus Regulations" or "the Regulations"), 31 C.F.R. Part 548. The Belarus Regulations were issued pursuant to the authorities of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, and Executive Order 13405, which represent the United States' response to the actions and policies of the Government of Belarus and its affiliates and their efforts to undermine Belarus' democratic processes, as well as human rights abuses and public corruption. Exec. Order 13405, 71 Fed. Reg. 35485 (June 20, 2006).

1

Unbeknownst to Plaintiff, UEB was designated pursuant to Executive Order 13405 in 2008. Due to its designation, any property or interest in property of UEB that comes within the jurisdiction of the United States is rendered blocked property. Therefore, when the bank in London, which was a foreign branch of a U.S. financial institution, presumed that the funds in question were those in which UEB held an interest, it took action to block the funds.

Plaintiff pursued administrative recourse by seeking a license to unblock the funds from the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), the agency responsible for administrating U.S. economic sanctions programs. Plaintiff's first request for an unblocking license was denied. In response, Plaintiff submitted a second request and presented additional evidence to support its arguments in favor of unblocking. However, despite its multiple requests, and without sufficient review of the evidence before it, OFAC denied Plaintiff's requests to unblock the funds.

The administrative record makes clear that OFAC's administrative process and ultimate denials are arbitrary and capricious and in excess of statutory authority. OFAC relies solely on the deference afforded to the Executive in matters of national security and foreign policy rather than sufficiently considering the underlying facts of the present case and rendering a reasonable decision thereto. This is made clear through the unsubstantiated denial letters from OFAC and furthered supported by Defendants' attempts to rationalize agency action through *post hoc* arguments.

In regards to the instant matter, OFAC's policies and regulations are unclear and ambiguous, raising the question as to what constitutes an "interest" in blocked property, and at what point does an interest become extinguished, if not through direct action by the parties, then through traditional and well established principles of contract law. Accordingly, Plaintiff

2

contends that there are material facts in dispute and summary judgment for Defendants is improper at this time and should therefore be denied.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

Pursuant to Local Civil Rule 7(h), and in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Plaintiff has concurrently filed a separate statement responding to Defendants' list of undisputed material facts.  Plaintiff contends, and as its opposition will illustrate, there exists several material facts in dispute and therefore, Defendants' motion should be denied.

## BACKGROUND

### A. The Blocking of Plaintiff's Property

Plaintiff is a privately-owned, large energy corporation located in Ukraine.  Plaintiff is wholly subject to the laws of Ukraine, and does not have any subsidiaries, branches, offices or agents in the United States.  Plaintiff's business operations are generally confined to Ukraine and surrounding areas, and thus Plaintiff does not generally transact with United States' persons or entities.

On April 3, 2012, Plaintiff entered into a simple deposit agreement with UE Belarusian Oil Trading House ("UEB") in Minsk, Belarus.[1] Administrative Record ("AR") 000005-13, 000029-37, 000063-71.  The purpose of the agreement was to participate in an auction organized by UEB in order to purchase certain oil products.  As identified in the agreement, UEB was to serve as the "Auction Organizer," and Plaintiff was designated as a "Bidder."  AR 000005,

---

[1] UEB was designated by OFAC and added to the List of Specially Designated Nationals and Blocked Persons ("SDN List") on May 15, 2008, pursuant to E.O. 13405.  According to an OFAC press release, UEB is a clearinghouse for financial, contractual, and web-based transactions on behalf of Belneftekhim Concern and its subsidiaries. Treasury Designates Three Entities of Major Petrochemicals Conglomerate in Belarus, May 15, 2008, *available at* http://www.treasury.gov/press-center/press-releases/Pages/hp978.aspx. Belneftekhim Concern was previously designated on November 13, 2007, based upon OFAC's determination that it is controlled by Belarusian President Alexander Lukashenko. Treasury Targets Lukashenko-controlled Petrochemical Conglomerate, November 13, 2007, *available at* http://www.treasury.gov/press-center/press-releases/Pages/hp676.aspx. Thus, UEB's designation is based solely on its alleged ties to an entity controlled by President Lukashenko.

000029, 000063; see also the Revised Kuchabskyy Declaration ("Rev. Decl.") ¶ 5.[2]  As such, UEB was simply serving as an intermediary and could never legally claim or financially benefit from the funds in question.

The auction utilized Electronic Auction System Software, and bidders in the auction were required to deposit 200,000 EURO in order to participate. AR 000008, 000032, 000066.  The deposit agreement clearly states that the funds remitted by the bidder are simply to be held in an account until such time as the auction is complete.  At the end of the auction the funds are returned to the bidder regardless of the outcome of the auction. AR 000008, 000010, 000011, 000032, 000034, 000035, 000066, 000068, 000069.

As noted in § 5.4 of the agreement, in the event the bidder loses or does not take part in the auction, the funds are repaid back *to the bidder's account*. AR 000011, 000035, 000069 (emphasis added).  Alternatively, if the bidder wins, the deposit is cancelled and released back *to the bidder* upon the execution of a separate supply agreement between the seller and bidder whereby payment is made directly thereto. AR 000010, 000034, 000068 (emphasis added).  As further explained in § 2.3, "the deposit shall not be included into the payment under the Oil Products supply agreement . . . it shall be reimbursed *to the bidder* after their carrying out the obligations stipulated in subclause 1.8 hereof . . ." AR 000008, 000032, 000066 (emphasis added).

Consequently, the deposit is nothing more than a means to participate in an auction for the sale of oil products occurring at a specified time and at a specified place. Rev. Decl. ¶ 8. Indeed, nothing in the agreement provides that the funds, or any percentage or fee thereof, is to

---

[2] The Revised Kuchabskyy Declaration is meant to provide the Court with additional factual background information regarding the deposit agreement. There is no new information provided; rather, the information in the Revised Declaration serves to clarify and reiterate the evidence that was before OFAC at the time of its decisions. See *Zarmach Oil Servs., Inc. v. Dep't of the Treasury*, 750 F. Supp. 2d 150 n.2 (D.D.C. 2010) (a party cannot create a new material issue of fact by offering new information that was not previously provided to the agency).

be retained by the auction organizer. This is further evidenced by § 6.1, which states that if the bidder is declared the auction winner and refuses to carry out its obligations, the deposit shall be transferred *to the seller* and under no circumstances retained by the auction organizer. AR 000011, 000035, 000069 (emphasis added).

In accordance with the terms of the deposit agreement, Plaintiff, as a potential bidder, initiated the transfer for the deposit on May 4, 2012 when it remitted 200,000 EURO from its account with CITI Bank Ukraine. AR 000001-4, 000014, 000038. The funds were destined for an account held by UEB at CJSC "JSCB" Belrosbank, located in Minsk, Belarus. *Id.* Outside of the control of the Plaintiff, payment was effectuated through an intermediary financial institution, Citibank, N.A., located in London, United Kingdom. *Id.* The intermediary bank, a foreign branch of a U.S. financial institution, blocked the transfer in accordance with E.O. 13405 and the Belarus Regulations and converted the funds to $258,705.53 U.S. dollars. AR 000045.

Significantly, the entire transaction, including payment, was intended to take place outside of the jurisdiction of the United States. Complaint ("Compl.") ¶ 17 (ECF No. 1); AR 000019-23, 000040-41. Plaintiff never intended for the transaction to come under U.S. jurisdiction, and further, had no reason to believe or to know that its deposit with UEB, which would ultimately be returned to it following the auction, would be considered a transaction in property in which a designated party maintains an interest. *Id.*; see also Rev. Decl. ¶¶ 10-11.

Plaintiff first became aware of UEB's designation under E.O. 13405 upon the blocking of its funds transfer. Compl. ¶ 26; AR 000019-23, 000040-41. In response, on May 30, 2012, Plaintiff submitted a standard unblocking application through OFAC's website requesting that its funds be unblocked. *See* 31 C.F.R. § 501.801(b)(2); AR 000001-15. Plaintiff completed the required unblocking form, thereby openly informing OFAC of the underlying circumstances

giving rise to the funds transfer, and furnishing a copy of the deposit agreement between Plaintiff and UEB.[3] AR 000002, 000005-15.

Plaintiff's unblocking application was denied by OFAC on October 12, 2012. AR 000017-18. Subsequently, on March 1, 2013, Plaintiff submitted a second application, in the form of a reconsideration of OFAC's initial decision, in an effort to present additional evidence and arguments to justify the unblocking of the funds. AR 000019-42. In its application, Plaintiff explained its unwitting transaction with a designated party, the efforts undertaken to terminate UEB's interest in the funds, and ultimately requested reconsideration of OFAC's initial denial. AR 000019-23. Included in Plaintiff's supporting documentation was a unilateral termination issued by UEB on June 1, 2012, immediately subsequent to Plaintiff's initial application, which confirmed that the deposit had been terminated under the terms of the agreement. AR 000039. Additionally, a declaration signed by the managing officer of Plaintiff under the penalty of perjury was provided. AR 000040-41. Once again, OFAC denied Plaintiff's application on September 6, 2013. AR 000084.

OFAC's denials were based on the simple assertion that "the release of the blocked funds would be inconsistent with OFAC policy" due to UEB's "interest" in the funds. AR 000017-18, 000084. Moreover, although in its first denial OFAC stated that it does not "recognize attempts to extinguish the interest of the sanctions target," such language is completely removed in its second denial. *Id.* Collectively, OFAC's denials did not specify whether it reviewed the terms of

---

[3] Defendants assert that in Plaintiff's initial unblocking request, Plaintiff "did not provide any other explanation for why the funds should be unblocked." Defs.' Mot. at 7; Smith Decl. ¶ 20. Plaintiff did not provide supplemental arguments because the required form does not request legal and policy arguments for why funds should be unblocked; rather, the form only requests a "detailed explanation for the transaction." AR 00001-4. Plaintiff believed that the deposit agreement was sufficient to justify the release of funds, and as such, did not provide additional arguments at that time. Plaintiff's compliance with submitting the required form should not be a factor used against it, as Defendants have otherwise implied.

the underlying deposit agreement, nor did they address the termination of the underlying

agreement or Plaintiff's declaration. *Id.*

The threadbare denials of OFAC, along with the deficient administrative record, reflect

OFAC's failure to fully review and analyze the terms of the deposit agreement in order to

understand the true character of the blocked funds. Moreover, the administrative record does not

establish the reasons for rejecting Plaintiff's arguments that UEB's interest in the funds was

extinguished. OFAC's actions, and the record upon which they rely, demonstrates that their

decision-making was arbitrary, and is devoid of adequate fact-finding procedures. As a result of

these actions Plaintiff has suffered substantial harm due to the fact that 200,000 EURO of

Plaintiff's own funds remain blocked per OFAC's regulations and actions, and will remain so for

an indefinite period of time.

### B. Statutory Background

IEEPA, codified under 50 U.S.C. §§ 1701-1706, authorized the President to deal with

"any unusual and extraordinary threat, which has its source in whole or substantial part outside

the United States, to the national security, foreign policy, or economy of the United States, if the

President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). The

authorities delegated to the President pursuant to IEEPA "may not be exercised for any other

purpose." 50 U.S.C. § 1701(b). To carry out the authorities delegated in IEEPA, the President

may:

> ". . . investigate, block during the pendency of an investigation, regulate, direct
> and compel, nullify, void, prevent or prohibit, any acquisition, holding,
> withholding, use, transfer, withdrawal, transportation, importation or exportation
> of, or dealing in, . . . or transactions involving, any property in which any foreign
> country or a national thereof has any interest by any person, or with respect to any
> property, subject to the jurisdiction of the United States . . ."

*Id.* § 1702(a)(1)(B).

7

Pursuant to IEEPA, the President issued Executive Order 13405 ("E.O. 13405" or "the Order") in June 2006, which declared a national emergency with respect to the Government of Belarus and the policies and actions of certain officials and supporters thereof. E.O. 13405, 71 Fed. Reg. 35485 (June 20, 2006). The Order blocks all property and interests in property of those designated pursuant to the Order that comes within the jurisdiction of the United States. *Id.* § 1. E.O. 13405 also delegates authority to the Secretary of the Treasury to designate individuals, as well as promulgate and enforce regulations that are necessary to carry out the Order. *Id.* §§ 1, 5.

The Order was implemented by the Secretary of the Treasury through the imposition of the Belarus Regulations, 31 C.F.R. Part 548. The Regulations provide that "all property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of U.S. persons, including their overseas branches, of [designated] persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." 31 C.F.R. § 548.201(a).

To further clarify the blocking provision of the Regulations, the terms "property" and an "interest in property" refers to any "property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future, or contingent." 31 C.F.R. § 548.308. Furthermore, the term "interest" is defined as "an interest of any nature whatsoever, direct or indirect." 31 C.F.R. § 548.305.

Generally, the term "transfer" refers to any transaction, "the *purpose, intent, or effect of which* is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property." 31 C.F.R. § 548.309 (emphasis added). The transfer of property or an interest in property includes "the making,

execution, or delivery of any assignment, power, conveyance . . . agreement, [or] contract . . ."
*Id.*

Transfers in blocked property are effectively null and void under the Regulations and "shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interests." 31 C.F.R. § 548.202(a). The only provision of the Regulations that pertains to the termination of an interest in property is set forth under § 548.403, which states, "Whenever a transaction licensed or authorized by or pursuant to this part results in the transfer of property (including any property interest) away from a person, such property shall no longer be deemed to be property blocked." 31 C.F.R. § 548.403(a).

### C. Procedural Background

In light of the foregoing, Plaintiff instituted this action on May 30, 2014, in order to have its property unblocked and released. Plaintiff contends that OFAC's decision to deny its applications is arbitrary and capricious and in excess of statutory authority under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2)(A), (C). Compl. ¶¶ 32-42. Furthermore, Plaintiff asserts that OFAC's internal fact-finding procedures are inherently defective and therefore *de novo* review by this Court is warranted. 5 U.S.C. § 706(2)(F). Compl. ¶¶ 43-45. When considering the record as a whole, Plaintiff is entitled to relief under the APA. There are material facts in issue, and thus, summary judgment is improper and Defendants' motion should be denied accordingly.

### STANDARD OF REVIEW

A court may grant a motion for summary judgment provided "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). To survive a motion for summary judgment the dispute must be genuine; specifically, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Considering that summary judgment is a drastic remedy, "courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." *Greenberg v. FDA*, 803 F.2d 1213, 1216 (D.C. Cir. 1986). Accordingly, "If the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper." *Id.*; see also *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

For claims brought under the APA, a court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Holy Land Found. For Relief and Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 66-67 (D.D.C. 2002) ("*Holy Land I*") (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). In reviewing the administrative record, the court must determine whether the agency's decision was supported by a "rational basis." *Id.* at 67. To determine whether a rational basis exists, the court must be satisfied that the agency has examined the relevant data and articulated a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Motor Vehicles*, 463 U.S. at 43.

If warranted, a reviewing court may forego the aforementioned standard and review the agency's decision *de novo*. 5 U.S.C. § 706(2)(F). A court is authorized to review an agency action *de novo* "when the action is adjudicatory in nature and the agency fact finding procedures are inadequate." *Overton Park*, 401 U.S. at 415; *Cabinet Mountains Wilderness v. Peterson*, 685 F. 2d 678, 685-86 (D.C. Cir. 1982). To this end, fact-finding procedures are inadequate if

deemed severely defective. *Overton Park*, 401 U.S. at 415; *Nat'l Org. for Women v. Social Sec. Admin.*, 736 F.2d 727, 745 (D.C. Cir. 1984).

## ARGUMENT

### A. OFAC's Denials Were Arbitrary and Capricious

An agency's action shall be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Further, judicial review of agency action is appropriate where a person has suffered a legal wrong because of agency action, or is adversely affected or aggrieved by agency action. 5 U.S.C. § 702. As demonstrated in this case, the denials of Plaintiff's unblocking applications are arbitrary and capricious and have harmed Plaintiff as a result.

In justifying the initial and continued blocking of Plaintiff's property, Defendants' chiefly rely upon the deference afforded to the Executive in matters of foreign relations. Defendants' Motion for Summary Judgment ("Defs.' Mot.") at 11-12. Undeniably, relevant jurisprudence dictates that "matters relating to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Regan v. Wald*, 468 U.S. 222, 242 (1984); see also *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 45 (D.D.C. 2005); *Holy Land I*, 219 F. Supp. 2d at 84; *Global Relief Found. v. O'Neill*, 207 F. Supp. 2d 779, 788 (N.D. Ill. 2002) ("*Global Relief I*"). Nevertheless, agency regulations and their interpretations thereto must be reasonable and cannot be plainly inconsistent with the regulations. *Consarc Corp. v. Dep't of the Treasury*, 71 F.3d 909, 915 (D.C. Cir. 1995); *Consarc Corp. v. Iraqi Ministry*, 27 F.3d 695, 702 (D.C. Cir. 1994) (holding that the inquiry rests on whether OFAC's construction of regulatory terms are "so far departed from common usage as to be plainly wrong"); *Zarmach Oil Servs., Inc. v. Dep't of the Treasury*, 750 F.Supp.2d 150, 156 (D.D.C. 2010).

*1. The deposit agreement did not convey an interest in property to a sanctions target.*

The relevant statutory authority implicated in the instant action is the blocking provision of the Belarus Regulations, which provides that "all property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of U.S. persons, including their overseas branches, of [designated] persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." 31 C.F.R. § 548.201(a). The crux of the blocking provision is based upon the assumptions that: 1) there exists property or an interest in property that is subject to blocking; and 2) the property or interest in property has come within the jurisdiction of the United States.

Here, Plaintiff contends that UEB, the designated party, never acquired an interest in the deposit, and therefore the continued blocking of Plaintiff's property is improper. Plaintiff's assertion is evidenced by the explicit terms of the deposit agreement; however, OFAC overtly failed to examine the relevant information presented in Plaintiff's unblocking applications before reaching its decisions to deny the requests to release the funds. Compl. ¶ 35. This is made clear by the conclusory statements in OFAC's denial letters, and in their internal deliberations memorialized in emails between the officials involved in those denials. AR 000016-18, 000048-49, 000084.

Several courts have previously addressed the interpretation and application of "interest" within the context of sanctions regulations administered by OFAC. In *Holy Land Found. v. Ashcroft*, the D.C. Circuit held that a designated foreign national need not have a "legally enforceable ownership interest" to justify a blocking under U.S. regulations. 333 F.3d 156, 162 (D.C. Cir. 2003) ("*Holy Land II*"). The court reasoned that the plain text of the statute makes clear that the term "interest" is defined broadly to include "an interest of any nature, whatsoever, direct or indirect." *Id.* The court went on to explain that because designated foreign parties

12

arguably could use the assets, and because the record indicated ample evidence that a designated party had a financial interest in the funds, the blocking was lawful under U.S. sanctions regulations. *Id.* at 163 (citing *Global Relief Found. v. O'Neill*, 315 F.3d 748 (7th Cir. 2002) ("*Global Relief II*").

In *Global Relief II*, the issue before the court was whether the assets of a U.S. corporation were subject to the blocking provisions of IEEPA and Executive Order 13224, which targets alleged supporters of global terrorists. 315 F.3d at 750. Global Relief Foundation argued that their assets should be unblocked because the relevant provisions were limited to situations where a "foreign national" maintains a "legal interest" in the assets. *Id.* at 752-53. The court rejected such an argument and held:

> "The function of the IEEPA strongly suggests that beneficial rather than legal interests matter. The statute is designed to give the President means to control assets that could be used by enemy aliens . . . Thus the focus must be on how assets could be controlled and used, not on bare legal ownership."

*Id.* at 753.

The cases cited above adopt the proposition that a sanctions target does not need to have a legally enforceable interest, yet there must exist some sort of beneficial interest. Indeed, the court in *Holy Land II* found an interest was present based upon substantial evidence in the record that indicated that foreign parties were involved in fundraising and providing funds to the organization, and therefore had undisputable access to the blocked property. 333 F.3d at 163. Likewise, in *Global Relief II*, the court held that the inquiry should focus on whether there is evidence of a beneficial interest, specifically "how assets could be controlled and used" by sanctioned targets. 315 F.3d at 753.

Even accepting the presumption that OFAC is afforded substantial deference in the interpretation and application of the terms "property" and "interest in property," the underlying

facts of this case indicate that there is a genuine dispute as to whether UEB had, or continues to have, an interest in the blocked funds.  When considering the terms and effects of the deposit agreement, OFAC's determination that UEB had an interest in Plaintiff's property is unreasonable and plainly inconsistent with the regulations. See *Consarc Corp.*, 71 F.3d at 915; *Iraqi Ministry*, 27 F.3d at 702; *Zarmach Oil Servs.*, 750 F. Supp. 2d at 156.

Specifically, the terms of the deposit agreement are direct evidence that UEB never acquired an interest in the funds.  Rather, the deposit was intended to serve as a means to participate in an auction, and would ultimately revert to the Plaintiff in *any scenario*.  The terms of the agreement state that the deposit was to be returned to Plaintiff in the event that: 1) Plaintiff lost the bid; 2) Plaintiff failed to participate in the auction; or 3) if Plaintiff won the bid and executed a separate agreement with the seller. AR 000008, 000010, 000032, 000034, 000066, 000068.  In the event that the Plaintiff won the bid but failed to follow through with the transaction with the seller, UEB was required to release the funds *to the seller* of the oil products. AR 000011, 000035, 000069.  Furthermore, there are no terms that authorize a payment, fee, commission or other financial interest regarding the deposit to UEB.  AR 000005-13, 000029-37, 000063-71.

Defendants may attempt to argue that the underlying deposit agreement effectuated a transfer of an interest in property as defined under 31 C.F.R. § 548.309; however, the record unquestionably confirms that Plaintiff did not execute the agreement with the purpose, intent, or effect of transferring an interest in property. AR 000019-23, 000040-41. Moreover, the terms of the agreement are clear that at no point in time did UEB have a direct, indirect, or future interest in the funds due to the fact that it never conveyed the authority to control the funds, use the

14

funds, or conveyed any type of future beneficial interest in the funds. AR 000005-13, 000029-37, 000063-71.

The line of cases that address "interests in property" have reached the same conclusion; a designated party must have, at the very least, a beneficial interest in the property. Here, the evidence provided to OFAC outlining the underlying transaction between Plaintiff and the designated party, UEB, does not support the argument that UEB acquired or maintained any type of beneficial interest in Plaintiff's property. In addition to Plaintiff's intent to simply participate in an auction by executing the deposit agreement, by the agreement's very terms UEB would never acquire any interest in the funds, direct, indirect, future or otherwise. Accepting the proposition that "the focus must be on how assets could be controlled and used, not on bare legal ownership," OFAC arbitrarily and capriciously determined that UEB had, and continues to have, an interest in the funds. See *Global Relief II*, 315 F.3d at 753.

The administrative record demonstrates that OFAC failed to review the deposit agreement to ascertain whether UEB actually acquired or was conveyed an interest in the funds. Rather, OFAC relied upon the designation of UEB under the Belarus Regulations, and the deference afforded them in blocking actions, without ultimately addressing the underlying issue in the case; whether UEB had, or has, an interest in Plaintiff's property. OFAC's denials are not based on a consideration of the relevant factors and therefore, it made a clear error of judgment in its denials and left open the material issue of whether UEB held an interest in the property.

### 2. *The facts relied upon are not rationally connected to the continued blocking.*

Agency action will be deemed arbitrary and capricious if the agency has failed to provide a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Motor Vehicles*, 463 U.S. at 43. Moreover, regardless of the substantial

15

deference afforded the Executive in matters of foreign affairs, it does not prevent the Court from conducting "a thorough, probing, in-depth review" of agency action. *Overton Park*, 401 U.S. at 415.

Without addressing the underlying requirement of whether UEB actually obtained an interest in the funds, OFAC automatically affirmed the block based upon the fact that UEB is a designated party. AR 000048.   Although the record makes mention of Plaintiff's policy arguments, the record is devoid of any further discussion of whether Plaintiff's arguments hold any merit. AR 000017-18, 000048, 000084.   Thus, as Defendants' motion illustrates, OFAC's refusals to unblock the property are clearly based on nothing more than OFAC policy and its belief that it should be afforded substantial deference in making such determinations. Defs.' Mot. at 11-13.

Specifically, Defendants argue that the substantial deference afforded to the Executive, and particularly OFAC, must prevail in consideration of underlying policy concerns implicated in blocking actions. Defs.' Mot. at 11.   As stated by John Smith in his Declaration, the main policies that support a blocking include: 1) limiting the flow of currency and other property to or for the benefit of a sanctions target, thereby preventing use that conflicts with U.S. interests; 2) disrupting commercial transactions with a sanctions target that touch the United States, thus isolating the target, raising the costs of engaging in such transactions, and discouraging third country business with a sanctions target; and 3) disrupting national security threats, minimizing sanctions evasions, and increasing the Executive's leverage when dealing with such threats. Defs.' Mot. at 11-12; Smith Decl. ¶11, 12.

Defendants' reliance upon the assertions in the Smith Declaration appear to be nothing more than *post hoc* rationalizations as to why OFAC refused to unblock Plaintiff's property.  See

16

*Public Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1, 10 (D.D.C. 2010). Indeed, the record is devoid of any deliberative agency process regarding Plaintiff's requests for unblocking, and the assertions made in the Smith Declaration appear to be an attempt to rationalize the basis of OFAC's denials of the unblocking requests after the fact. As such, Plaintiff urges the Court to discount the Smith Declaration because *post hoc* rationalizations "cannot substitute for an agency's failure to articulate a valid rationale in the first instance." *Zarmach Oil Servs.*, 750 F. Supp. 2d at 155.

Alternatively, Plaintiff contends that the blocking of Plaintiff's property does not implicate any of the aforementioned concerns. First, as already addressed in the previous section, UEB never had a legal or beneficial interest in the funds. Indeed, there is nothing in the record to demonstrate that UEB was permitted to control, use or access the deposit for their own benefit. Thus, Defendants' first policy argument must fail because there was never a risk that UEB had the ability to utilize the funds to its benefit in contradiction of U.S. interests and policy goals.

Further, Defendants' second policy goal assumes that the initial and continued blocking of Plaintiff's property affects the actions of third parties and their dealings with Belarus sanctions targets because "it provides notice that funds intended for such entities may end up frozen in U.S. banks." Defs.' Mot. at 12. Reliance on such a policy is incredulous given that there is no public notice of the blocking, except for the instant suit, which has not been actively publicized. Thus, Defendants' policy argument as to this point is not rationally related to the continued blocking of Plaintiff's property.

To the extent the Court is willing to entertain such an argument, Plaintiff would further call the Court's attention to the fact that the stated policy objective has already been satisfied and therefore, there is no compelling need to continue to block Plaintiff's property. As clarified by

Defendants, the isolation of sanctions targets is accomplished when international commercial transactions are negatively impacted, thereby preventing access to the U.S. and global marketplaces and raising the costs of doing business with the targets. Defs.' Mot. at 11; Smith Decl. ¶ 11.

Here, the intended consequences were achieved when an intermediary financial institution subject to U.S. jurisdiction blocked Plaintiff's property. Plaintiff realizes that the blocking represents an assertion of the U.S. foreign policy objectives declared in E.O. 13405, and as such, sought to provide assurances to OFAC that it would not engage in future conduct with UEB or any other designated party. AR 000019-23, 000040-41; Rev. Decl. ¶¶ 13-15. OFAC clearly did not take into account Plaintiff's remedial efforts, which seem to be directly in conformity with the underlying policy goals Defendants have asserted. Indeed, if the underlying policy is to isolate sanctions targets, and a party comes forth providing assurances that it will comply with such a policy in respect to current and future transactions, it is only rational to conclude that the stated policy objectives have been met.

Finally, disrupting national security threats, minimizing sanctions evasions, and increasing the Executive's leverage when dealing with such threats, are not relevant considerations based on the underlying circumstances of the blocking. Plaintiff has repeatedly asserted that it did not intentionally engage in a transaction with a designated party, and therefore was not attempting to evade U.S. sanctions regulations. AR 000019-23, AR 000040-41; Rev. Decl. ¶ 10, 11. The assurances provided by Plaintiff further demonstrate that it will not engage in any future transactions with UEB, effectuate alternative payments to UEB, nor reinstate the deposit agreement. AR 000040-41; Rev. Decl. ¶ 14. As such, any concerns as to circumvention of U.S. sanctions are alleviated.

In sum, even if the Court were to accept that such policy arguments are well-founded, they manifestly do not address the underlying question of whether UEB actually had, or continues to have, an interest in Plaintiff's property. To further stress this point, reliance upon the cited policy concerns foregoes a consideration of the underlying inquiry as to what constitutes an "interest in property" and whether OFAC's denials are rationally connected to the facts found and the choice made. *Motor Vehicles*, 463 U.S. at 43.

In light of the foregoing, Plaintiff contends that the Court's inquiry should not focus solely on the foreign policy concerns involved, but whether there was an interest in property to justify the continued blocking of Plaintiff's property. Upon review of the record as a whole, and in consideration of relevant precedent and a plain reading of the Regulations, OFAC's refusals to unblock Plaintiff's property are not rationally based. More importantly, Plaintiff's case leaves open the material issue of whether UEB maintained an interest in the property and thus summary judgment is improper.

### B. OFAC's Decisions Were Made in Excess of Statutory Authority

In accordance with the APA, an agency's action shall be set aside if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Defendants' contend that an interest in blocked property came within U.S. jurisdiction, and was properly blocked, and any attempts to extinguish such interest thereafter are not recognized without a license authorization from OFAC. Defs.' Mot. at 13-16. Defendants believe that the exercise of OFAC's discretionary authority in denying Plaintiff's applications was rationally based and permissible under relevant sanctions law. *Id.*

Yet such judgments are flawed due to Defendants' assumption that UEB was the "intended beneficiary" and therefore had an interest in the transfer. Defs.' Mot. at 13. The

underlying facts of the case clearly demonstrate that UEB never acquired an interest in the funds, as that term has been defined in the Regulations or case law, and to the extent that it did, such interest was effectively terminated through the operation of the contract, if not by the actions of the parties themselves.  Therefore, OFAC's denials were not rationally based upon the record, and the agency consequently exceeded its authority by continuing to block Plaintiff's property.

### 1.  OFAC exceeded its authority by continuing to block funds in which no sanctions target maintains an interest.

As previously discussed, in order for a designated party to have an interest in property, there must be some type of beneficial interest whereby the designated party is able to control, use or access the property in question. See *Holy Land II*, 333 F.3d at 163; *Global Relief II*, 315 F.3d at 753.  Thus, regardless of whether IEEPA and the Belarus Regulations provide for the blocking of property in which a sanctions target has "any interest," that is simply not applicable to Plaintiff's property because no interest was ever conveyed. 50 U.S.C. § 1702(a)(1)(B); 31 C.F.R. §§ 548.201, 548.305.

The contention that UEB never obtained an interest is further strengthened by the analysis in *Zarmach Oil Servs., Inc. v. Dep't of the Treasury*, 750 F.Supp.2d 150 (D.D.C. 2010). In *Zarmach*, a funds transfer related to the purchase of oil drilling rights was made to Sudapet, a government controlled petroleum company designated under the Sudanese Regulations. *Id.* at 153.  Upon transfer, the funds were inadvertently routed through a U.S. intermediary bank and blocked. *Id.* at 154.

In filing suit, Zarmach claimed that OFAC's decisions to maintain the blocking of property was in excess of its statutory authority because the Government of Sudan no longer retained an interest in the funds. *Id.* at 156.  This argument was based on the fact that the funds were never successfully transferred to Sudapet, and further, the obligation was fulfilled through a

separate transaction. *Id.* at 155-156.    The court upheld the blocking due to the broad interpretation of the term "property interest," as defined by OFAC regulations, and found that because the Sudanese Government maintained an "indirect future or contingent interest" due to the underlying purchasing contract, OFAC acted within its statutory authority in denying the unblocking requests. *Id.* at 156.  The court also refuted Zarmach's arguments that the second payment extinguished any interest in the blocked funds, and further acknowledged that OFAC regulations "contain no provision by which the efforts of a sanctions target and a company it wishes to do business with can, on their own, 'un-block' assets frozen by OFAC." *Id.* at 157.

The underlying circumstances and arguments presented in *Zarmach* are distinguishable from Plaintiff's case and moreover, tend to support Plaintiff's argument that UEB never had an interest in the property.  Specifically, the terms of the deposit agreement between Plaintiff and UEB pertain to participation in an auction for oil products that was to occur at a specific time and in a specific place. AR 000008, 0000032, 000066.  As opposed to the underlying contract in *Zarmach*, the agreement is devoid of any transfer, assignment, or delegation of rights in property. AR 000005-13, 000029-37, 000063-71.  Furthermore, unlike the characterization of funds in *Zarmach*, which represented a payment to purchase oil rights, the funds at issue in Plaintiff's case represent a deposit that were to revert to Plaintiff regardless of the outcome of the auction. *Id.*  It is therefore reasonable to assert that UEB never had any type of interest in the funds, whether it be an indirect future or contingent interest or otherwise, and consequently, OFAC cannot exercise its blocking authority over property in which a sanctions target does not have an interest.

Defendants further argue that Plaintiff cannot, through its unilateral action, extinguish UEB's interest in the funds. Defs.' Mot. at 15.  Defendants contend that under established

sanctions law, only the President may authorize an unblocking of property in which a designated party has an interest, and once property is blocked, OFAC does not recognize any attempts by any other party to cancel the transactions or extinguish the sanctions target's interest in the blocked property. *Id.*

Assuming *arguendo* that UEB acquired an interest in the property upon the execution of the deposit agreement, Plaintiff contends that such interest was extinguished through not just the actions of Plaintiff, but alternatively, through the operation of contract law. AR 000040-41; Rev. Decl. ¶12-14. Indeed, the terms of the deposit agreement are clear that UEB no longer retains a cognizable interest in the funds. Compl. ¶ 39.

As dictated by the terms of the deposit agreement, it was terminated due to the failure of Plaintiff to comply with the specific terms of the agreement. AR 000010, 000034, 000068. Thus, the failure to comply with the deposit requirement resulted in a voiding of the contract, which is further supported by the unilateral termination. AR 000012, 000036, 000070. Specifically, the unilateral termination states that the cause of termination is stipulated by the deposit agreement due to failure to receive the deposit for participation in the auction. AR 000039. Thus, through independent operation of the agreement itself, rather than any actions or steps taken by Plaintiff, or UEB, any interest UEB may have had in the property was effectively extinguished. As such, any subsequent action taken by Plaintiff, such as the submission of a signed declaration, only furthered what the agreement had already accomplished. AR 000040-41.

Defendants rely upon the Belarus Regulations, which state that once property or an interest in property has been blocked, any attempt to transfer such property without a license is effectively null and void. Defs.' Mot. at 6, 15; 31 C.F.R. §§ 548.202(a), 548.309. However, there is no precedent that addresses whether the independent operation of contractual terms,

22

without any action taken by a party with an interest in the funds, renders a cognizable interest extinguished.

As such, Plaintiff contends that not only are OFAC's denials not rationally connected to the exercise of its authority, but more importantly, there remains a genuine dispute as to the operation of the contractual terms related to the funds transfer in this matter and the effects thereto.

### 2. OFAC's policy arguments are not rationally connected to the continued blocking.

The policy arguments recited by Defendants are irrelevant to Plaintiff's case. Defendants argue that to unblock the funds would "merely delay wire transfers," by causing foreign companies to find "alternative means to make payment," thereby resulting in "only a minor inconvenience . . ." Defs.' Mot. at 15 (citing Smith Decl. ¶ 13).[4] It is argued that such a result would diminish the President's leverage capacity and would do little to disrupt international transactions with sanctions targets. Id.

The idea that blocking property is only a mere inconvenience to foreign companies is dubious. Plaintiff's property has been blocked since May 2012 and Plaintiff has since exhausted administrative remedies prior to filing the instant suit. Moreover, such an argument assumes that third parties are aware of the commercial dealings of Plaintiff, and more importantly, its pursuit in the unblocking of funds from OFAC. Besides Plaintiff and Defendants, the only party with knowledge of the blocking is UEB, the sanctions target. Arguably, if the blocking in some way harmed UEB, or put other foreign companies on notice, perhaps there would be merit in Defendants' reliance upon this particular policy concern. Yet, as addressed previously in

---

[4] As stated supra, Plaintiff reiterates the argument that the Smith Declaration is an attempt to inject *post hoc* rationalizations to support Defendants' reasons for continuing to block Plaintiff's property. The Smith Declaration attempts to raise new policy arguments that were simply not considered by OFAC in making its decisions to deny Plaintiff's unblocking requests. See *Overton Park*, 401 U.S. at 419 (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962)).

Plaintiff's opposition, and reiterated again here, this type of policy argument is simply irrelevant to the unblocking of Plaintiff's property largely due to the fact that UEB never had, or has, an interest in the property.

Furthermore, this particular policy argument takes into account hypothetical transactions rather than addressing the matter at hand. OFAC should have concerned itself with whether UEB held an interest in the funds; not whether foreign companies should collectively be prevented from conducting potential international transactions with UEB in the distant future. The result of such an overbroad approach translates to a punitive measure against Plaintiff for not just the conduct in the instant matter, but for all future transactions in which UEB may someday be involved. This is highly unreasonable and an exertion of extraterritorial authority in international commercial transactions which is beyond the scope of OFAC's statutory authority.

To quell Defendants' remaining concerns regarding any future conduct with UEB, Plaintiff previously provided such assurances through a signed declaration. AR 000040-41; Rev. Decl. ¶¶ 13-17. However, Defendants would have the Court believe that neither OFAC nor the U.S. Government have the authority to police or penalize Plaintiff were it to find an alternative means of paying UEB and reinstate the agreement upon recovery of the blocked funds. Defs.' Mot. at 16; Smith Decl. ¶ 25.

Defendants' arguments are simply untrue and appear to be an attempt to circumvent the logical reasons for unblocking articulated by the Plaintiff. Pursuant to IEEPA and the Belarus Regulations, a person or entity can be held liable for civil and criminal violations of the prohibitions contained therein. 50 U.S.C. § 1705; 31 C.F.R. § 548.701. The United States Code also criminalizes the willful making of false statements under oath or before a branch of the U.S. Government. 18 U.S.C. §§ 1001, 1621; 28 U.S.C. § 1746. Thus, it is not wholly unreasonable to

24

provide assurances through the form of a written declaration, signed under penalty of perjury, given the fact that several means are available to the U.S. Government if it were to find that Plaintiff blatantly acted contrary thereto.

Lastly, Plaintiff seeks to reemphasize that it would not find an alternative means or payment, nor reinstate the contract, because UEB never had an interest, and certainly do not currently have one, for which an alternative payment must be made. At all times, and under the explicit terms of the agreement, the property remained under the control of the Plaintiff, and Plaintiff is under no obligation, contractual or otherwise, to remit a payment to UEB to satisfy an outstanding debt or other financial obligation. Furthermore, the agreement by its own terms is expired, therefore, factually there is no purpose for which an alternative payment is required.

In consideration of the distinguishing factors cited in *Zarmach*, and a plain reading of the terms of the deposit agreement and concepts of traditional contract law, there is a material dispute as to whether UEB had an interest in the funds, or if it did, whether such interest has been extinguished through either contractual terms, or through the actions of the Plaintiff and UEB. Further, Defendants' policy concerns are collectively inapplicable to Plaintiff's circumstances. As such, summary judgment is not proper given that there is a question as to whether OFAC exceeded its statutory authority in continuing to block funds in which no sanctions target maintains an interest.

### C. **OFAC's Denials Should be Reviewed *De Novo***

The Court may hold unlawful and set aside agency action found to be unwarranted by the facts to the extent they are subject to *de novo* review. 5 U.S.C. § 706(2)(F). The *de novo* standard of review is necessitated "when the [agency] action is adjudicatory in nature and the agency fact finding procedures are inadequate." *Overton Park*, 401 U.S. at 415; *Cabinet*

25

*Mountains*, 685 F.2d at 685-86. Agency action is considered adjudicatory whereby the decision involves a review of underlying factual circumstances of "who did what, where, when, how, why, [and] with what motive or intent," as opposed to conducting a review of the specific legislative framework and policies related thereto. *Nat'l Org. for* Women, 736 F.2d at 737 n.95. Thus, *de novo* review is authorized in an adjudicatory action where the underlying procedures are inadequate to the extent they are deemed severely defective. *Overton Park*, 401 U.S. at 415; *Nat'l Org. for Women*, 736 F.2d at 745.

As relevant here, OFAC regulations allow for interested parties to apply for, and receive, a specific license application for transactions that may otherwise be prohibited. 31 C.F.R. § 501.801(b). The specific licensing provisions include requests related to the release of blocked funds. 31 C.F.R. § 501.801(b)(2).

In its applications to OFAC, and in accordance with the applicable licensing regulations, Plaintiff provided information regarding the underlying circumstances of the blocking, and included several arguments with evidentiary support that its funds should be unblocked. Specifically, Plaintiff argued that the release of funds was warranted based upon the following: 1) Plaintiff simply believed it was entering into an arrangement to participate in the auction; 2) UEB retained no interest in the funds; and 3) Plaintiff's assurances that it would not transact with UEB in the future in any regard. AR 000019-23, 000040-41.

Yet, as the administrative record demonstrates, OFAC failed to fully evaluate the underlying factual circumstances giving rise to the blocking of funds. Indeed, OFAC did not review the terms of the deposit agreement, did not acknowledge Plaintiff's lack of intent to transact with a blocked party, nor fully addressed the policy arguments proffered by the Plaintiff. The only citation in the record that discusses Plaintiff's arguments for the release of funds is an

26

email exchange that occurred shortly after Plaintiff's second application in which there is a brief reference to Plaintiff's foreign policy arguments in favor of the unblocking. AR 000048.

The record is devoid of any discussion of case-specific details of the transaction, particularly as to the terms of the deposit agreement or the assurances provided by the Plaintiff. More specifically, there is no indication from the record that OFAC read the terms of the deposit agreement. Plaintiff contends that by its very terms, there is a genuine dispute as to whether UEB was an intended beneficiary of the property given that under no circumstances it was to have any rights to the deposit itself.

Despite Plaintiff's attempts to follow the published licensing provisions for the release of blocked funds,[5] OFAC failed to conduct adequate fact finding procedures related thereto. Rather, OFAC appears to rests its decision solely based upon the designation of UEB pursuant to E.O. 13405. AR 000016-18; 000043-52; 000077-84. Without question, the foreign policy objectives associated with the Belarus Regulations provide background to be considered when reviewing Plaintiff's applications for unblocking. However, Plaintiff has never questioned the designation of UEB under the Order; rather, Plaintiff submitted its applications in order to demonstrate that the factual circumstances do not justify the blocking of its property because UEB never had, nor currently has, an interest in the property.

The administrative record clearly demonstrates that the specific facts of Plaintiff's case were only minimally considered. Indeed, the record depicts an adjudicatory decision that rests solely on foreign policy, rather than analyzing the specific underlying facts at issue. Defendants attempt to negate the application of *de novo* review by arguing that OFAC's scant denials are the only contention at issue and thus, *de novo* review is inapplicable. Defs.' Mot. at 17 (*citing Camp v. Pitts*, 411 U.S. 138, 142 (1973) (holding *de novo* review inappropriate because the only

---

[5] *See* 31 C.F.R. § 501 801(2), (3).

deficiency raised was the inadequacy of the explanation set forth in the agency's decision). Contrary to Defendants' assertions, the administrative record undeniably establishes the numerous deficiencies in OFAC's internal procedure regarding Plaintiff's request for unblocking. OFAC engaged in little, if any, fact finding before rendering its denials; namely, it did not consider Plaintiff's explanation of the events giving rise to the block, nor did it adequately consider the deposit agreement or signed declaration in reaching its decision. As such, OFAC's internal procedures were inherently defective and the Court should review the administrative record *de novo* and conclude that OFAC erred in its decisions to uphold the blocking of property.

## CONCLUSION

WHEREFORE, premises considered, Plaintiff respectfully requests the Court to deny Defendants' Motion for Summary Judgment, as the Defendants have not presented sufficient evidence for this Court to dismiss the case as a matter of law. Plaintiff has demonstrated that there are material facts in dispute, and therefore Defendants' motion should be denied.

Dated: October 24, 2014

Respectfully submitted,

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: Ferrari@ferrariassociatespc.com
DC Bar No. 978253

28

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Opposition to Defendants' Motion for Summary Judgment was served to all parties on the 24th day of October, 2014, via the ECF system.

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: Ferrari@ferrariassociatespc.com
DC Bar No. 978253

*Attorney for Plaintiff*
*OKKO Business PE*

29

# EXHIBIT 1

**Declaration of Yuriy Kuchabskyy**

I, Yuriy Kuchabskyy, hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. My full legal name is Yuriy Kuchabskyy;

2. My primary address is _84 Ivana Franko St., apt. 20,_ ; _Lviv, 79000, Ukraine_

3. I am the managing officer of OKKO-Business PE ("OKKO"), a privately owned enterprise formed and operated under the laws of Ukraine;

4. On April 3, 2012, a deposit agreement ("Agreement") was executed between OKKO and Unitary Enterprise Belarusian Oil Trading House Republican Subsidiary ("UEB") for participation in an auction to purchase oil products;

5. The Agreement identified OKKO as a "Bidder" and UEB as the "Auction Organizer;"

6. Under the terms of the Agreement, OKKO was required to render a deposit amount in order to participate as a bidder in the auction;

7. UEB was the auction organizer, not the seller of oil products, and therefore not the ultimate beneficiary of the funds;

8. OKKO remitted 200,000 EURO to an account held by UEB, which represented the deposit amount required to participate in the auction;

9. Upon remittance from OKKO's account with Citibank Ukraine, the funds were routed through Citibank, N.A., in the United Kingdom, converted into U.S. dollars in the amount of $258,705.53, and blocked;

10. OKKO was completely unaware of the U.S. economic sanctions targeting UEB prior to its funds being blocked;

11. OKKO would not have entered into a contract with UEB or remitted a deposit to UEB had it known UEB was blocked by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC");

12. Since learning of UEB's designation, OKKO has made a consistent effort to refute any assertion that UEB had, or has, an interest in the funds;

13. To this end, OKKO has fully terminated its prior relationship with UEB and has provided assurances to OFAC under penalty of perjury that neither OKKO nor any of its subsidiaries or affiliates will seek to do business or enter into any transactions with UEB in the future;

14. Through the instant declaration, OKKO seeks to reiterate its assertion that it will not seek an alternative means of paying UEB, reinstate the agreement or pursue new agreements with UEB, or transact with UEB in any manner whatsoever in the future;

15. OKKO has made these assertions to OFAC directly, and does so again here, under the penalty of perjury;

Page 2 of 3

16. I, Yuriy Kuchabskyy, as managing director of OKKO, understand that knowingly and intentionally making material false statements before a U.S. executive or judicial authority carries with it the potential for criminal prosecution in the United States under 18 U.S.C. §§ 1001, 1621;

17. I further understand that if the funds are unblocked and subsequently returned to OKKO, and OKKO proceeds to act contrary to any of the assurances provided in the instant declaration, there may be potential liability under the laws of the United States for willful violations of Executive Order 13405, the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*. and the Belarus Sanctions Regulations under 31 C.F.R. Part 548.

So declared on this date, *October 14, 2014*, by Yuriy Kuchabskyy of OKKO-Business PE, a privately owned enterprise formed and operated under the laws of Ukraine.

_____
Signature of Yuriy Kuchabskyy

Page 3 of 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OKKO Business PE                          )
                                          )
                                          )
                    *Plaintiff,*          )
                                          )
        v.                                )        **1:14-cv-00925-CKK**
                                          )
JACOB J. LEW et. al.,                     )
                                          )
                    *Defendants*          )
                                          )
                                          )

### PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 7(h), and in response to Defendants' Statement of Undisputed Material Facts, OKKO Business PE, Plaintiff, by and through undersigned counsel, Erich C. Ferrari, hereby submits the following:

1. Plaintiff disputes this statement to the extent it implies that Plaintiff knew that UE Belarusian Oil Trading House ("UEB") was designated on May 15, 2008. Compl. ¶ 19; AR 000019-23, 000040-41; Revised Declaration of Yuriy Kuchabskyy ("Rev. Decl.") ¶ 10.

2. Plaintiff does not dispute this statement.

3. Plaintiff disputes this statement to the extent it implies that Plaintiff knew the transfer would be routed through Citibank, N.A., in the United Kingdom. Compl. ¶ 17; AR 000019-23, 000040-41.

4. Plaintiff does not dispute this statement.

5.  Plaintiff disputes this statement to the extent that the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") considered all relevant information before it and clearly explained the basis for its denial. Compl. ¶ 35; AR 000001-000015. Plaintiff further disputes this statement to the extent that OFAC's considered whether UEB had, or has, an interest in the blocked property. *Id.*

6.  Plaintiff does not dispute this statement.

7.  Plaintiff disputes this statement to the extent that OFAC clearly explained the basis for its denial, made its decision within the bounds of its statutory authority, and rendered a denial that was warranted by the underlying facts. Compl. ¶ 32-45. Plaintiff further disputes this statement to the extent that OFAC considered whether UEB had, or has, an interest in the blocked property and whether the terms of the underlying deposit agreement resulted in any effect thereto. Compl. ¶ 35, 39, 45; AR 000019-42; Rev. Dec. ¶¶ 5-7, 13-14.

Respectfully submitted on this 24th day of October, 2014.

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: Ferrari@ferrariassociatespc.com
DC Bar No. 978253

*Attorney for Plaintiff*
*OKKO Business PE*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| OKKO Business PE | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **1:14-cv-00925-CKK** |
| | ) | |
| JACOB J. LEW | ) | |
| in his official capacity as | ) | |
| Secretary of the Department of the Treasury, | ) | |
| | ) | **ORDER** |
| *Defendant* | ) | |
| And | ) | |
| | ) | |
| ADAM J. SZUBIN | ) | |
| in his official capacity as | ) | |
| Director of the Office of Foreign Assets Control | ) | |
| | ) | **ECF Case** |
| *Defendant,* | ) | |
| | ) | |
| And | ) | |
| | ) | |
| THE UNITED STATES DEPARTMENT | ) | |
| OF THE TREASURY, OFFICE OF FOREIGN | ) | |
| ASSETS CONTROL | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## ORDER

BE IT REMEMBERED that on this date came on to be heard the Plaintiff's Opposition to Defendants' Motion for Summary Judgment and the Court having considered the same is of the opinion that Defendants' Motion is DENIED.

IT IS SO ORDERED.

SIGNED and ENTERED this _____ day of _____ , 2014.

_____
HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE